```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

JEFFREY JOSEPH WANG,

                  Plaintiff,              MEMORANDUM & ORDER
                                            20-CV-4193(EK)
        -against-

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
-----------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Jeffrey Wang challenges the Social Security Administration's denial of his claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.

### I. Background

**A. Procedural Background**

In March 2017, Wang applied for disability benefits, alleging a disability onset date of December 7, 2015. Administrative Tr. ("Tr.") 132, ECF No. 10. The agency denied his claim in June 2017. *Id*. at 12. Wang appealed that decision to an administrative law judge ("ALJ"). On March 14, 2019, an ALJ held a hearing on Wang's claim. *Id*. at 29-46. The ALJ concluded that Wang was not disabled and therefore not entitled to disability benefits. *Id*. at 12-21. The Appeals Council

denied Wang's request for review of the ALJ's decision, rendering that decision final. *Id.* at 1-4. Wang timely sought review of that decision in this Court.

**B. The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P,

app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, ALJ Patrick Kilgannon determined that Wang had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. The ALJ also determined that Wang suffered from the following "severe impairments": polyarteritis nodosa (a multi-system disorder characterized by inflammation and damage to the arteries), diabetes, and obesity. *Id*. However, the ALJ went on to determine that none of these impairments rose to the level of a Listed Impairment. *Id*. at 14-15.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Wang had the RFC to perform a range of "sedentary work" with limitations. Tr. 15. Those limitations included that Wang could sit for six hours, at most, in an eight-hour workday, and could stand or walk only for two hours a day. *Id*. In addition, he specified (among other things) that Wang could only occasionally crouch, crawl, climb, balance, stoop, and kneel. *Id*.

At step four, the ALJ considered whether, in light of the RFC determination, the claimant could perform "past relevant

work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Wang could not perform his past work as a chef, based on a vocational expert's testimony. Tr. 20. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Here, he determined that Wang could perform certain such jobs, including as a document preparer, information clerk, and call out operator. Tr. 21. Given that conclusion, the ALJ determined — in a thorough and comprehensive opinion — that Wang was not disabled. *Id.*

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[1]

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v.*

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

*Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## II. Discussion

Wang raises two arguments on appeal. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 1, ECF No. 12-1. He argues, first, that the ALJ improperly credited two consultative examiners' conclusions concerning his physical abilities over the contrary opinion of Wang's treating rheumatologist, Dr. Julie Schwartzman-Morris. *Id*. at 12; *see* Tr. 18-19 (finding Schwartzman-Morris's opinion "less persuasive" and the consultative examiners' opinions "more persuasive"). Second, Wang contends that the ALJ failed to adequately assess his subjective complaints of pain and his description of the limits on what he could do on a daily basis. *Id*. at 17. Neither claim has merit.

**A. Opinion Evidence**

Wang contends that the ALJ improperly discounted the opinion of his treating physician. Dr. Schwartzman-Morris, who had treated Wang since March 2016, opined that Wang had numerous limitations on his ability to work. She observed, among other things, that he would need three to five unscheduled breaks per day, would be absent more than three times a month due to

5

impairments or treatment, and that his symptoms would be aggravated if he were placed in a work environment.  Tr. 541-49.

For claims filed after March 27, 2017 (like Wang's), the "treating physician rule" no longer applies.  *See Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022); 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").[2]  Thus, the opinion of a treating physician is no longer presumptively entitled to controlling weight.

Instead, all medical opinions are assessed against the same set of criteria: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors," including familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1-5); *see Bellore v. Kijakazi*, No. 20-CV-2306, 2022 WL 955134, at *3 (E.D.N.Y. Mar. 30, 2022) (explaining these factors).  Supportability and consistency are the "most important factors" the agency considers when evaluating "the persuasiveness of medical opinions."  20 C.F.R. § 404.1520c(a).

---

[2] The regulation that contained the treating physician rule was repealed on January 18, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (effective March 27, 2017).

The ALJ considered the medical opinion evidence of multiple doctors: Wang's treating physician, Dr. Schwartzman-Morris, and two consultative examiners, Drs. Evelyn Wolf and Rita Figueroa. Applying the factors mandated by Section 404.1520, the ALJ found Dr. Schwartzman-Morris's assessment (that Wang could not perform sedentary work) to be "less persuasive" than the contrary conclusions of the consultative examiners. This was because, among other things, Schwartzman-Morris attested to "some very significant limitations . . . that do not seem objectively supported." Tr. 18. These limitations included Schwartzman-Morris's conclusions that Wang could never lift more than five to ten pounds and that he was significantly limited in using his fingers and hands for fine manipulations. *Id.* at 545-46.

These conclusions, the ALJ noted, were not consistent with the record evidence indicating that Wang's "condition primarily affects his lower extremities" — rather than his fingers and hands — and that "his disease activity is reasonably well controlled." *Id.* at 18. This record evidence came, in turn, from several sources, but primarily from Wang's own testimony and the consultative examiners' findings.

The ALJ contrasted Schwartzman-Morris's opinion with Wang's own description of his symptoms: he called the treating physician's conclusions "less persuasive, especially since the

7

finding of moderate limitations in the use of claimant's hands and arms" was at odds with "the claimant's statement that the condition primarily affects his lower extremities."  *Id*.  "Likewise," the ALJ went on, a limitation of "being able to sit less than two hours is refuted by claimant's statement to his doctor [Schwartzman-Morris] that he doesn't have pain when sitting."  *Id*.

The ALJ also contrasted the treating physician's opinions with those of the consultative examiners, whose conclusions were consistent with one another's.  Dr. Figueroa concluded that Wang's condition mainly affected his lower extremities.  Tr. 582.  She noted Wang's normal gait, that he used no assistive devices, and (importantly, given Schwartzman-Morris's conclusion) that he displayed intact hand and finger dexterity and normal grip strength.  *Id*. at 582, 584.  Dr. Wolf, the ALJ observed, "noted very similar findings."  *Id*. at 19.  The consultative examiners' shared finding that Wang had "healthy upper extremit[ies]" upon examination "refuted," in the ALJ's view, Dr. Schwartzman-Morris's assessment of Wang's limitations in the use of his hands and arms.  *Id*. at 18.  In addition, Wang told Dr. Wolf "that he can walk half a mile, which directly conflicts with the reduced standing / walking that the treating physician notes."  *Id*. at 19.

Wang argues that the consultative examiners' opinions sounded in "vague terms, which courts have found insufficient to support a determination that a Plaintiff is not disabled." Pl. Mem. 14. But neither of the consultative examiners' opinions were vague; they both relied on detailed examination findings and treatment notes to support and explain their conclusions. Dr. Wolf's exam findings, for example, ran four pages in length. Tr. 321-25 (Dr. Wolf's full report). Similarly, in a five-page report, Dr. Figueroa detailed the findings of her examination, including that Wang "appeared to be in no acute distress," had "normal" gait, "used no assistive devices," and that his "hand and finger dexterity" was "intact." *Id.* at 582-86.

In addition, Plaintiff faults the ALJ for neglecting "to address the fluctuating nature of" his symptoms, even though Dr. Schwartzman-Morris concluded that Plaintiff's impairments were likely to produce good and bad days. Pl. Mem. 12. The ALJ's omission to explicitly address the "good and bad days" component of Dr. Schwartzman-Morris's opinion does not merit remand. The ALJ explained why he found her opinion as a whole less persuasive. The regulations do not require the ALJ to "articulate how" he "considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). And the ALJ's RFC assessment was otherwise supported by the consultative examiners' opinions about Wang's functional

9

limitations and other record evidence that indicated Wang's limitations were not as severe as he alleged. *See* Tr. 15-20.

Wang also claims that the ALJ failed to address Dr. Schwartzman-Morris's opinion that the Plaintiff would need three to five unscheduled breaks during the day, but this claim is not correct. The ALJ's RFC assessment did account for "normal breaks" for Wang throughout the workday. Tr. 15. This was enough because the ALJ explained why he found Dr. Schwartzman-Morris's opinion as a whole less persuasive. *See* 20 C.F.R. § 404.1520c(b)(1). In addition, however, the ALJ's inclusion of "normal breaks" roughly accounts for four breaks in a day — right in the middle of the treating physician's three-to-five range. *See, e.g.*, *Swain v. Colvin*, No. 14-CV-869, 2017 WL 2472224, at *3 (W.D.N.Y. June 8, 2017) ("Normal work breaks and meal periods split an eight hour workday into approximately two hour periods."); *see also* SSR 96-9p, 1996 WL 374185 at *6 (July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

At bottom, the ALJ's conclusions regarding Wang's limitations were supported by substantial evidence.

10

**B.   Subjective Complaints**

Wang also argues that the ALJ erred by failing to give adequate weight to his subjective complaints of pain and limited ability to perform daily activities.  Pl. Mem. 17-18.  Wang acknowledges that the ALJ went through Plaintiff's self-reported list of daily activities, but faults the ALJ for his ostensible failure to "meaningfully discuss [the] circumstances affecting the applicability of these activities."  *Id*. at 18; *see also* Tr. 19.  Accordingly, Plaintiff argues, the ALJ did nothing more "than rely on objective medical evidence for the subjective complaint analysis, which is contrary to 20 C.F.R. § 404.1529(c)(2)."  Pl. Mem. 18.[3]

Section 1529 instructs ALJs to "consider all [of a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective evidence and other evidence."  20 C.F.R. § 404.1529(a); *see also Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) ("The ALJ must consider statements the claimant or others make about her impairments, her restrictions, [and] her daily activities . . . .").  Here, contrary to

---

[3] In Section 404.1529(c)(2), the agency commits that: "[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."

11

Plaintiff's claims, the ALJ did consider Plaintiff's subjective complaints and testimony, in addition to the objective medical evidence discussed above. Referring to an SSA "Function Report" form that the Plaintiff filled out in 2016, Tr. 162-169, the ALJ found that Plaintiff's "reported daily activities are greater than one might expect" for someone with his conditions. *Id*. at 19. The ALJ noted Plaintiff's report that "he takes care of his dog by walking, feeding and washing him," that he has "no problems with personal care," and that he "is able to prepare food, do laundry," dust, vacuum, load the dishwasher, and drive a car, among other daily tasks. *Id*. The ALJ also noted that Wang reported to a pain-management doctor in 2016 that "he continues to work." *Id*.; *see also id*. at 577. This discussion reflects the ALJ's consideration of Plaintiff's testimony and its consistency with other record evidence.

### IV.  Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies

Wang's motion. The Clerk of Court is respectfully requested to enter the judgment and close the case.

SO ORDERED.

                                                            /s/ Eric Komitee
                                              ERIC KOMITEE
                                              United States District Judge

Dated:    August 18, 2022
            Brooklyn, New York